[Cite as *State v. Squires*, 2021-Ohio-2035.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                 :

    Plaintiff-Appellee,                    :

                                          No. 110059

          v.                                          :

JEFFREY SQUIRES,                            :

    Defendant-Appellant.                  :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** June 17, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-628610-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney,
and Steven N. Szelagiewicz, Assistant Prosecuting Attorney, *for
appellee.*

Jeffrey Richardson, *for appellant.*

MICHELLE J. SHEEHAN, J.:

{¶ 1} Defendant-appellant Jeffrey Squires appeals the trial court' imposition

of consecutive sentences. Because the trial court made the findings required by

R.C. 2929.14(C), we affirm the sentence imposed by the trial court, but remand the

case to the trial court to issue a journal entry of sentence that conforms with the sentence imposed in open court and upon the record.

## PROCEDURAL HISTORY AND FACTS

{¶ 2} On November 14, 2018, after being charged with 10 counts of rape, felonies of the first degree, and two counts of gross sexual imposition, felonies of the second degree, Squires entered into a plea agreement with the state and pleaded guilty to three counts of sexual battery, felonies of the third degree. On December 4, 2018, the trial court imposed an aggregate sentence of 12 years' imprisonment consisting of three 48-month sentences for each offense to be served consecutively. On appeal, this court reversed the sentence because "the court did not address the initial portion of R.C. 2929.14(C)(4)(b) that '[a]t least two of the multiple offenses were committed as part of one or more courses of conduct.'" *State v. Squires*, 8th Dist. Cuyahoga No. 108071, 2019-Ohio-4676, ¶ 33. We remanded this matter for resentencing, noting that "[i]f the trial court determines at the resentencing hearing that consecutive sentences are appropriate under RC. 2929.14(C)(4), the trial court shall 'make the required findings on the record and incorporate those findings in the sentencing journal entry in accordance with *Bonnell*[, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659].'" *Id.* at ¶ 36, quoting *State v. Brown*, 8th Dist. Cuyahoga No. 102549, 2015-Ohio-4764, ¶ 30.

{¶ 3} In our opinion reversing the trial court's imposition of consecutive sentences, we noted the facts presented at the sentencing hearing as follows:

Doe read her written statement for the record.

Your Honor, my name is [Jane Doe] and I loved [Squires] as a father figure. He betrayed me and my mom. And I didn't know he was coming home early that day and he hurt me when he made me have sex with him and he did hurtful things to me. When I said it hurt me, he didn't care and he kept hurting me.

And I ask that he get the maximum possible sentence for that. That's what I wrote.

(Tr. 25.)

Doe's mother also made a statement. She summarized Doe's developmental difficulties caused by her Down syndrome by stating that Doe "has never grasped the concept of her age and being able to give consent on her own." (Tr. 26.) "[Doe] is an adult in age but functions as a child in many ways." *Id.* The mother explained that Doe had difficulty with her parent's divorce several years earlier and that she rarely saw her father because he has been suffering from cancer. The mother met Squires and eventually introduced him to her children. Doe and Squires "became close, like father and daughter." (Tr. 27.)

The mother then recited the events leading up to Doe's revelation to her maternal uncle that Squires had sexually assaulted her. The uncle called the mother. "He said Doe was upset and needed me and then he told me Doe said Squires had sex with her, had his mouth on her breasts, had sex in her front and back and put his penis in her mouth." (Tr. 28.) The mother next described the extensive and irreparable physical and emotional harm that Squires acts have visited on their lives and said,

I'm asking this [c]ourt to punish the defendant for what he's done to [Doe]. I truly believe he's only sorry that he got caught. My daughter deserves justice and we hope he's sentenced to the maximum that you can give him under law. Thank you.

(Tr. 32.)

Finally, the trial court heard from the investigating detective Stolz of the Strongsville Police Department. The detective shared excerpts of

his investigation and his interview with Doe. Doe's doctor told the detective that Doe "has the mental capacity of a 10-or 11-year-old child." (Tr. 33.) The detective tailored his interview "to the ones that I conduct with young children." (Tr. 33-34.) Doe giggled and was embarrassed by the anatomical drawings and referred to breasts as "boobies" and a vagina as a "private area." (Tr. 34.) Doe also said that Squires was being "rude" when he pinned her arms back and raped her. *Id.*

During the interview, Doe revealed that additional assaults had occurred, though she had difficulty with the concept of time and describing the duration of the assaults. During a controlled call between Squires and Doe's mother, Squires promised it wouldn't happen again. After his arrest, Squires admitted his guilt to a fellow inmate and acknowledged Doe's mental handicap.

*Id.* at ¶ 17-21

{¶ 4} On February 12, 2020, the trial court held a sentencing hearing after our remand. The court heard from the state and the victim's mother. She related the extent of her daughter's disabilities and outlined how Squires came into their life and then detailed the nature of the crimes committed against her daughter. She iterated the confrontation she had with Squires, noting that he did not deny the crimes to her. She provided details of the change in her daughter, noting that both she and her daughter have been in counseling for a year and that her daughter continued to have nightmares. Squires's counsel outlined the findings the court would have to make in order to impose consecutive sentences and argued that they did not apply to the facts of the case, specifically arguing that there was no evidence of a course of conduct.

{¶ 5} The trial court stated that it reviewed all the arguments and pleadings filed with the court as well as this court's opinion. It imposed three consecutive terms of 48 months. As to imposing consecutive sentences, the trial court found:

> It is necessary to protect the public and punish the offender, and it is not disproportionate to the conduct of the offender, and at least two of the multiple offenses were committed as a part of one or more courses of conduct and that harm caused by two or more multiple offenses so committed were so great or unusual that no single prison term for any of the offenses committed is a part of any course of conduct accurately reflects the seriousness of the conduct.

The trial court explained its findings by stating that the crimes occurred over a period of five months where Squires imposed his will on the victim who had limited mental abilities. The trial court found Squires knew of the victim's "mental handicap," took advantage of her, and abused his position of trust. It indicated that there was a discernable "connection, some common scheme, or some pattern of psychological thread that ties these offenses together" and stated Squires had "a similar motivation in each of these offenses which to impose his sexual will upon the victim whether it be by force or other means because she's impaired."

{¶ 6} In total, the trial court imposed an aggregate sentence of 144 months consisting of three consecutive 48-month terms of imprisonment to be served consecutively. The journal entry reflecting the sentencing from which Squires appeals reads in pertinent part:

> The court imposes a prison sentence at the Lorain Correctional Institution of 44 month(s). Counts 1, 7 and 10, fel-3's: 48 months on each count, consecutive. It is necessary to protect the public and to punish the offender and it is not disproportionate to the conduct of the offender and at least two of the multiples were committed as a part

of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as a part of any court [sic] of conduct adequately reflects the seriousness of the offender's conduct.

(Emphasis deleted.)

{¶ 7} This court remanded the matter for correction of the entry where the entry stated that the court imposed a sentence of 44 months, not the 144 months imposed in court. On March 29, 2021, the trial court entered the following entry nunc pro tunc:

Pursuant to Court of Appeals Case Number 110059, nunc pro tunc corrected sentencing entry entered: The court imposes a prison sentence at the Lorain Correctional Institution of 48 months.

(Emphasis deleted.)

## LAW AND ARGUMENT

{¶ 8} Squires raises one assignment of error, which reads:

The trial court erred in sentencing the appellant to consecutive three-year sentences [sic] for a total of twelve years for felonies of the third degree. The court's findings were not supported by the manifest weight of the evidence.

{¶ 9} Squires argues that the record does not support the trial court's findings made pursuant to R.C. 2929.14(C). He argues that the facts of his crimes do not amount to a "course of conduct" and, thus, the trial court could not make a finding under R.C. 2929.14(C)(4)(b). The state argues that the repeated sexual crimes Squires committed against a mentally disabled victim did amount to a course of conduct and that the record supports the findings made by the trial court.

{¶ 10} When reviewing felony sentences, this court applies the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Only if we "clearly and convincingly" find that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4) may we increase, reduce, or otherwise modify a sentence, or vacate a sentence and remand for resentencing. *State v. Brechen*, 8th Dist. Cuyahoga No. 108667, 2020-Ohio-2827, ¶ 21. In order to impose prison terms consecutively, a sentencing court is constrained by R.C. 2929.14(C)(4), which provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.
>
> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 11} The trial court found that Squires's offenses were committed as a part of a course of conduct. Squires acknowledges the trial court made the requisite findings pursuant to R.C. 2929.14(C) in imposing consecutives sentences but argues that it could not find that the three acts of sexual battery constituted a course of conduct under R.C. 2929.14(C)(4)(b). Ohio's sentencing statutes do not specifically define "course of conduct." The Second District Court of Appeals has confronted this issue and noted:

> The term "course of conduct" is not defined in R.C. 2929.14, but other sources provide some guidance. The supreme court has held that, for purposes of a death specification in a case involving multiple murders, a course of conduct may be established by factual links, including time, location, weapon, cause of death, or similar motivation. *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 144. Ohio Jury Instructions has included this definition in at least one of its instructions. *See* 2 Ohio Jury Instructions 513.49(E)(6). Similarly, "some connection, common scheme, or some pattern or psychological thread that ties" offenses together can establish a single course of conduct. *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, syllabus.

*State v. Summers*, 2d Dist. Darke No. 2013 CA 16, 2014-Ohio-2441, ¶ 14; *see also State v. Kay*, 2d Dist. Montgomery No. 26344, 2015-Ohio-4403, ¶ 19.

{¶ 12} In this case, the trial court considered the motivation, connection, and scope of Squires's crimes against his victim in determining that a course of conduct existed to link the three sexual assaults. Further, given the seriousness of the crimes, their continuation, and the harm caused not only to the victim but to her family, the record contains support for the trial court's finding pursuant to R.C. 2929.14(C)(4)(b). As such, we cannot find that the record clearly and

convincingly fails to support the trial court's findings and Squires's assignment of error is overruled.

{¶ 13} At the sentencing hearing, the trial court imposed a 144-month aggregate prison sentence. However, the journal entry of conviction does not accurately reflect that sentence. "A nunc pro tunc entry may be used to correct a sentencing entry to reflect the sentence the trial court imposed upon a defendant at the sentencing hearing; the defendant's presence is not required for entry of the nunc pro tunc order because the nunc pro tunc order does not modify the original sentence." *State v. Sandidge*, 8th Dist. Cuyahoga No. 109277, 2020-Ohio-1629, ¶ 8, citing *State v. Hall*, 8th Dist. Cuyahoga No. 96791, 2011-Ohio-6441, ¶ 22. Accordingly, we remand this matter for the limited purpose of the trial court to enter nunc pro tunc an entry of conviction that reflects the sentence imposed in court.

## CONCLUSION

{¶ 14} The trial court made the statutory findings in order to impose consecutive sentences. The facts indicated the crimes were committed as a course of conduct where the sexual assaults were committed over a period of time against the same victim. The record further supports this conclusion that the offenses were committed as a course of conduct where the trial court discerned a similar motivation for the offenses. Given the seriousness of the crimes and the harm caused to the disabled victim and her family, the record further supports the finding that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶ 15}** Although we affirm the sentences imposed by the trial court, we remand this matter for the limited purpose of issuing a nunc pro tunc entry of conviction that reflects the aggregate 144-month sentence imposed in this case.

**{¶ 16}** Judgment affirmed, and case is remanded for further proceedings consistent with this opinion.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for issuance of a nunc pro tunc journal entry and execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHELLE J. SHEEHAN, JUDGE

ANITA LASTER MAYS, P.J., and
EILEEN A. GALLAGHER, J., CONCUR